The LaSalle County Carbon Coal Company, Appellee,
  *vs.* The Sanitary District of Chicago, Appellant.

*Opinion filed October 28, 1913—Rehearing denied Dec. 4, 1913.*

1. Corporations—*right of a coal company to recover damages
for permanent injury to surface of land.*  A corporation organized
to mine, coke and sell coal may purchase land for the purpose of
securing the underlying coal and may use the surface for agri-
cultural or other purposes, and the question of its right to hold
and use the surface cannot be raised by a sanitary district as a
defense to an action by the coal company for damages for perma-
nent injury to the land for agricultural purposes, due to its being
overflowed with water.

2. Real property—*when restricting period for proving condi-
tion of land prior to permanent injury is not error.*  In an action
against a sanitary district for damages for permanent injury to
land from overflow, it is not an abuse of the court's discretion to
restrict the proof of the condition of the land respecting overflows
prior to the alleged permanent injury to a period of fifteen years.

3. Same—*cause of action for permanent injury to land does
not pass to a grantee of the land.*  If the owner of land injuri-
ously affected or damaged by a permanent structure does not bring
any action to recover damages but conveys the land to another
person the cause of action does not pass with the title nor inure
to the benefit of the grantee, but the grantee takes the land as he
finds it.

4. Same—*title by prescription becoming complete after cause
of action has accrued is not sufficient.*  A title based upon twenty
years' adverse possession of land will not support an action for
damages for permanent injury to the land from overflow, where,
at the time the cause of action accrued, the adverse possession
had lasted for only fifteen years, even though the suit was not
brought until after the full period of twenty years' adverse pos-
session was complete.

5. Same—*plaintiff alleging ownership of land must prove fee.*
Where a declaration in an action for damages for permanent in-
jury to land from overflow alleges that the plaintiff is the owner
of the land the proof must show ownership in fee, and there can
be no recovery as to a portion of the land to which the plaintiff
has no paper title but only a title by prescription, which has be-
come complete since the cause of action accrued.

6. Practice—*proof of reasonable attorney's fee may be heard
before judgment is pronounced.*  Where the motion for new trial

and in arrest of judgment has been overruled in an action against a sanitary district for damages to land from overflow, the court may hear proof of the reasonable attorney's fee provided for by section 19 of the Sanitary District act, before rendering judgment.

Appeal from the Circuit Court of LaSalle county; the Hon. Samuel C. Stough, Judge, presiding.

Edmund D. Adcock, and Burnet M. Chiperfield, (Claude E. Chiperfield, and Frank J. Quinn, of counsel,) for appellant.

Andrew J. O'Conor, and A. E. Butters, (J. L. O'Donnell, John H. Armstrong, and Duncan, Doyle & O'Conor, of counsel,) for appellee.

Mr. Justice Farmer delivered the opinion of the court:

The LaSalle County Carbon Coal Company, a corporation, brought this action against the defendant, the Sanitary District of Chicago, in the circuit court of LaSalle county, to recover damages for permanent injuries to real estate the plaintiff claimed to own, and which the declaration alleged had been caused to be overflowed by the defendant by waters brought by it from Lake Michigan through the Desplaines river into the Illinois river by means of its channel connecting the waters of Lake Michigan with the Desplaines river, which empties into the Illinois river. The declaration was filed January 14, 1905, and alleged that by means of channels, embankments and outlets constructed by the defendant, large quantities of water were caused to flow from Lake Michigan through the Desplaines river into the Illinois river which would not have flowed into said Illinois river in a state of nature, thereby overflowing and rendering wet, and damaging the value of, plaintiff's lands described in the declaration. A demurrer to the declaration was overruled, and the defendant pleaded the general issue, the Statute of Limitations, a plea deny-

ing that the plaintiff owned the lands described in the dec-
laration, and a special plea that the plaintiff had not been
injured in any use of the land it was lawfully entitled to
make.   The last mentioned plea in substance alleged that
the plaintiff was authorized to own and, hold land for the
purpose of mining, coking and selling coal, or any use
necessarily incidental thereto, but that it had no authority
to own land for any other purpose.   The circuit court sus-
tained demurrers to the plea of the Statute of Limitations
and to the special plea alleging that the plaintiff had not
been injured in any use of the land that it was lawfully
entitled to make.   Issue was joined on the other pleas.   The
cause was tried upon the issues joined and verdict was ren-
dered in favor of the plaintiff for $35,000, upon which the
court entered judgment after overruling defendant's mo-
tion for a new trial.   The court, against the objections of
the defendant, allowed $5000 as plaintiff's attorney's fees,
to be taxed as costs.   A freehold being involved by the
pleadings, the defendant has brought the case directly to
this court by appeal.

A brief statement of the facts as disclosed by the evi-
dence is as follows:   Plaintiff is a corporation organized
under the laws of this State for the mining, coking and
selling of coal, and in addition to other lands owns between
900 and 1000 acres of low, river bottom land lying along
the Illinois river, south of the cities of Peru and LaSalle.
The general course and direction of the river at that place
is west, and all of the land involved, except a small tract,
lies on the south side of the river.   The land is underlaid
with coal and was bought' by the plaintiff to secure this
coal.   For several years prior to the construction and com-
pletion of the sanitary district channel the plaintiff had
rented the surface of the land for agricultural purposes.
Corn appears to have been the only crop raised on the land.
The soil was rich and fertile, but it was subject to over-
flow at certain seasons of the year prior to the construction

of the sanitary district channel. Tenants who had farmed the land, and others who were acquainted with it and had observed it during this period of years, testified that in most of the years before the sanitary district channel was opened, it could be, and was, successfully farmed in raising and harvesting corn, but that since the opening of said channel into the Illinois river the water in the river was raised and the land overflowed to such an extent that it could not be successfully cultivated. Defendant's evidence was in many respects conflicting with plaintiff's testimony. Defendant contended that the water level had not been raised by the waters from the sanitary district more than one foot, and that the overflows which interfered with the cultivation of the land and the raising of corn thereon were not caused by the waters brought into the Illinois river through the district's channel. The trial of the case lasted three weeks and the evidence of about one hundred and fifty witnesses was heard.

Numerous errors are discussed in the brief of appellant, which consists of more than three hundred pages, but having reached the conclusion that the judgment must be reversed because of the failure of the plaintiff to prove its ownership of all the lands for injury to which damages were assessed, we will not enter upon a detailed discussion of all the errors complained of. As the case will have to be remanded for a new trial, it will be proper to briefly mention some of the alleged errors for the guidance of the court and parties in any new trial of the case.

Numerous complaints are made of the rulings of the court in the admission and rejection of the testimony. It would be remarkable if all the rulings of the court had been strictly accurate, and we cannot say that they were, but most, if not all, of the errors in this respect were of a minor character and could not have prejudiced defendant.

There was no error in the ruling of the court in sustaining the demurrer to the plea of the defendant that the

plaintiff had no right or authority to own land for any other purpose than mining, coking and selling coal, and that it was not entitled to damages to the land for agricultural purposes. It is true that the plaintiff is a corporation organized to mine, coke and sell coal, but it has authority to own and hold such real estate as is reasonably necessary or incidental to the exercise of the powers for which it was incorporated. The exercise of these powers requires that it have authority to secure coal to mine, coke and sell. This may, and it is well known frequently does, require the purchase of the surface of the land in order to secure the coal underneath. For that purpose a coal mining corporation may purchase land, and while it owns it may use the surface for agricultural or other purposes. Whether it could be required, in a proceeding by the State, to sell the surface of the land not necessary to the operation of mining, coking and selling coal cannot be inquired into by defendant. (*Barnes* v. *Suddard,* 117 Ill. 237; *Cooney* v. *Booth Packing Co.* 169 id. 370.) No presumption can be indulged in this action that the plaintiff has not the right to continue to own and use the land. Anything injurious that depreciates its value during such ownership is a damage to the plaintiff and may be recovered by it. Plaintiff is the only party that has suffered injury from the alleged depreciation in the value of the land and no other party could maintain an action therefor. There is no possibility of the defendant ever being called upon again to answer for the injury to the land owned by the plaintiff, and there was no error in sustaining the demurrer to the plea and allowing proof of permanent injury to the surface of the land for agricultural purposes.

Early in the progress of the trial the court announced that no evidence would be heard as to the condition of the land and the overflows prior to the year 1885 and struck from the record the evidence previously heard as to the condition prior to that year. This ruling is complained of,

but we do not think it was an abuse of the discretion of the court. The evidence permitted to be heard as to the condition of the land and the effect upon it from the overflows was for a period of fifteen years before the sanitary district channel was opened, in January, 1900, and for a period of twelve years thereafter. This, it would seem, was amply sufficient to show whether the land had been injuriously affected by the waters from the sanitary district.

We think the complaint that the declaration does not sufficiently state a cause of action for permanent injury to the land is without merit. The declaration described nearly 1000 acres of land which it alleged the plaintiff owned and that it was permanently damaged by the defendant. The right to recover for damages to between 400 and 500 acres was abandoned and damages were claimed to but 630 acres of the land described. Plaintiff in its brief has divided this land into four tracts, numbered 1, 2, 3 and 4, and for convenience we will so refer to it here. Tract No. 1 contains 376.12 acres and tract No. 2 contains 41.50 acres. Both of these tracts are in section 21. Tracts Nos. 3 and 4 are in sections 22 and 23, and together contain 212.17 acres. Plaintiff introduced in evidence deeds of conveyance to it, covering all the lands embraced in the said four tracts except a tract of between 18 and 20 acres in section 21, and proved possession under said conveyances from the time they were made down to the time of trial. The deed to the plaintiff to all the land in section 21 was dated November 8, 1883. It does not describe a tract of between 18 and 20 acres for which plaintiff sought to, and did, recover damages. Possession of this tract, together with the other lands in section 21, was taken by plaintiff at the time of receiving the deed which described the other lands in controversy in section 21, and it has continued in possession ever since. It is not denied that the plaintiff failed to prove any record title to said 18 or 20-acre tract, but it is claimed it was in possession of it for more than twenty years be-

fore suit was brought and that it obtained title by prescription. It is also claimed that defendant, being a stranger to the title, cannot defeat a recovery for permanent damages to it by the party in possession, by technical objections to the paper title.

At the request of the plaintiff the court gave to the jury the following instruction:

"While the plaintiff must prove, by a preponderance of the evidence in this case, that it had the legal title to the land in question, yet you are charged that if the plaintiff has proven, by the greater weight of all the evidence in this case, that it was in the open, peaceable, notorious and exclusive possession, either by itself or tenant, of the real estate described in the declaration in this case on and prior to the 17th day of January, 1900, and up to and including the trial of this suit, and during that time paid all taxes due thereon, then there is sufficient proof of its title for the purposes of this suit, in the absence of evidence tending to show that it does not have the legal title to said land."

The cause of action accrued to the owner of the land in January, 1900, when the sanitary district channel was opened and the water turned into the Illinois river. At that time plaintiff had not been in the possession of this land twenty years. This suit was brought in 1905, and counsel contend that the plaintiff's title by prescription was complete before the action was brought. In our opinion the plaintiff could not rely upon title by prescription unless its possession had ripened into title before the cause of action accrued. When the right of action accrued the then owner of the land had a right to sue and recover for any permanent damages caused by the acts of the defendant complained of, but the grantee of such owner after the cause of action accrued could not maintain a suit for damages for permanent injury. Plaintiff was not in the adverse possession of the tract of land referred to, for twenty years before January, 1900, when the water from the sani-

tary district channel was turned into the Illinois river, and did not at that time have title to the land, by adverse possession or otherwise. That its title became complete by prescription after the cause of action accrued places it in no different position from what it would have been in if it had not been in possession but had acquired title by conveyance after the right of action accrued. If the owner of real estate injuriously affected or damaged by a permanent structure, and who has not brought an action to recover damages, conveys the land to another, the cause of action does not pass with the title nor inure to the benefit of the grantee, but the grantee takes the land as he finds it, the presumption being that he has the benefit of the depreciation in value in the price paid. This has been so frequently held by this court that it is unnecessary to do more than cite some of the cases. *Chicago and Alton Railroad Co.* v. *Maher,* 91 Ill. 312; *Chicago and Eastern Illinois Railroad Co.* v. *Loeb,* 118 id. 203; *Wabash, St. Louis and Pacific Railway Co.* v. *McDougall,* 118 id. 229; *Illinois Central Railroad Co.* v. *Allen,* 39 id. 205; *Galt* v. *Chicago and Northwestern Railway Co.* 157 id. 125.

Counsel for the defendant moved to exclude from the consideration of the jury all question of damages to the tract of land referred to, on the ground that the plaintiff had not proved title thereto, but the court overruled the motion. This action of the court, and the giving of the instruction above set out, we think were such errors as to require a reversal of this judgment. Plaintiff alleged in its declaration that it was the owner of the land, and this meant that it was the owner in fee. It sought to recover for permanent depreciation in the value of the land, and to authorize it to do so it was necessary for it to prove such ownership.

Complaint is made of the amount allowed plaintiff as attorney's fees and taxed as costs, and of the procedure in fixing the amount. Section 19 of the Sanitary District act

provides that the corporation shall be liable for all damages to real estate outside of the district which will be overflowed or otherwise damaged by reason of the construction, enlargement or use of any channel, ditch, drain, outlet or other improvement under the provisions of the act, "and in case judgment is rendered against such district for damage, the plaintiff shall also recover his reasonable attorney's fees to be taxed as costs of suit," provided sixty days' notice in writing is given before commencement of the suit, in accordance with the provisions of such section. After motions for a new trial and in arrest of judgment had been overruled, and before judgment had been pronounced by the court on the verdict, plaintiff's counsel stated they desired to prove a reasonable attorney's fee to be taxed as costs. Defendant's counsel objected to the hearing upon the question of attorney's fees until after judgment had been rendered upon the verdict, but this objection was overruled and evidence heard as to what would be a reasonable attorney's fee, before rendering judgment upon the verdict. Defendant contends that this proceeding was erroneous, and that before any evidence could be heard for the purpose of fixing the amount of the attorney's fees, judgment was required to be rendered upon the verdict for the damages. We think this contention without merit. The court had determined to render judgment on the verdict when he overruled the motions for a new trial and in arrest of judgment. Before pronouncing judgment on the verdict he heard evidence as to what amount should be taxed as costs for plaintiff's attorney's fees, and whether this was the only proper procedure, it was at least proper. After hearing the evidence on the question of attorney's fees the court rendered judgment on the verdict for the damages and taxed $5000 as costs for plaintiff's attorney's fees.

It is claimed, also, that the amount allowed as tiff's attorney's fees is excessive. No proof was offe on the question of what was a reasonable, customary and usual

fee at the LaSalle county bar except that offered by the plaintiff, and that tended to support the action of the court in the amount taxed. As the case must go back for another trial we have not determined whether the amount allowed as counsel is so large as to require our disapproval, but we think it not improper to say that we would have been better satisfied with the allowance for attorney's fees if the amount had been materially less.

For the errors indicated the judgment is reversed and the cause remanded.        *Reversed and remanded.*