**Illinois National Bank and Trust Company of Rockford, Appellee, v. City of Rockford, Appellant.**

**Gen. No. 10,348.**

Opinion filed September 29, 1949.    Released for publication October 31, 1949.

CHARLES S. THOMAS, Corporation Counsel of Rockford, for appellant.

GUYER & SMITH, of Rockford, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This appeal comes here from the circuit court of Winnebago county, wherein a judgment was entered for appellee in the sum of $3,500 as a result of a trial without a jury.

The complaint filed herein alleges that the plaintiff owns a vacant lot on a public alley extending from Wyman street in Rockford, Illinois eastward to the Rock River. The lot extends southward from the south border of this alley 66 feet and is 43.5 feet in width. The west line of the lot is 98 feet east of the east side of Wyman street and 135 feet west of the west bank of Rock River. The east end of the alley is the west bank of the Rock River and there is no means of ingress or egress into the alley from the east.

The only means of ingress and egress to the lot is by the way of the alley and the only means of entering the alley is by way of Wyman street.

It is also alleged in the complaint that the lot is bounded on the south by a vacant lot owned by the city extending to Elm street, that the lot to the south is leased as a parking lot and the lessees refuse access to the plaintiff from Elm street; that in 1930 the city raised the grade of and paved Wyman street so that the alley was approximately five feet below the grade of the street rendering it useless and unavailable for public travel; that a request was made by plaintiff and others to the city in 1946 to open and improve the alley to provide access, which request was ignored; that a building was constructed on the alley by the Central Illinois Electric and Gas Company which further obstructed this alley way; that the city wrongfully permitted the alley to be and remain obstructed and inaccessible to the plaintiff and that plaintiff has been wholly prevented from using the lot for any purpose and the plaintiff seeks damages.

The complaint also initiated a separate equity action seeking an injunction against the city permitting the alley to remain unusable for public travel by reason of any drop off, declivity or obstruction in the alley. This separate equity action count was dismissed.

The defendant filed a motion to strike the complaint and dismiss the suit on the grounds that the suit was not filed within five years and hence was barred by the five year statute of limitations. This motion was denied, whereupon the defendant filed an answer denying some of the allegations, setting up that pedestrian travel to and in the alley has not been blocked since 1930 and again pleaded the five year statute of limitations (section 15), ch. 83, par. 16, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 107.275].

The record discloses that on August 3, 1896, the defendant passed an ordinance reciting that the alley

in question 10 feet in width had been used as a public alley and resolved that it had been a public alley and "that said alley be kept free and clear from encroachments and obstructions which will in any manner militate against its use as a public alley."

The record also indicates that the plaintiff acquired the lot by deeds from various heirs of the original owner all of which were recorded August 16, 1944, and that the alley was at grade with Wyman street until 1930 but that when Wyman street was opened and paved there was a drop off of 55 inches and the alley could not thereafter be used for vehicular traffic, although there were stairs for pedestrian usage.

Mr. Olson, who was beneficiary of the trust of which the plaintiff was trustee, testified to the facts alleged in the complaint. He stated that he was in the parking business; that there was no access to his property for vehicular traffic; that the lot to the south of it was owned by the city and leased but the lessee would not let him use the property for ingress and egress to the lot. In September 1946, he and others petitioned the city council to open the alley, but with no success.

He further testified that he could have rented the property for 10 individual car stalls at $6 per month from August 16, 1944, until November 1, 1947, and thereafter at $10 per stall. The court basing its award on this testimony awarded judgment for $3,410.

The city offered in evidence the special assessment proceedings for opening and widening Wyman street but they were excluded by the court. The city also introduced the tax and special assessment proceedings showing that the property in question was sold for $1,500. Mr. Olson testified that the property cost him about $2,500.

The defendant seeks to reverse the judgment on the ground that the plaintiff's action is barred by the statute of limitations; that plaintiff has no cause of action because plaintiff acquired the property subse-

quent to the improvement of Wyman street in 1930; that the excluded special assessment proceedings determined the damage to the land acquired by the plaintiff and are final and conclusive and that the measure of damages adopted by the trial court is erroneous.

The plaintiff's theory is that the City of Rockford owes the duty to keep the alley in question in a reasonably safe usable condition free of obstructions; that the 55-inch declivity existing at the west end of the alley constitutes an obstruction rendering vehicular traffic to and from plaintiff's premises impossible and that the continued failure of the defendant city to repair, open or maintain the alley for vehicular traffic wrongfully deprives the plaintiff of the use and enjoyment of his premises. Plaintiff claims this is in the nature of a common or public nuisance and that plaintiff is especially damaged because he has no other means of ingress or egress to his premises.

Giving attention to the paramount and controlling question, namely, is this action barred by the statute of limitations? First we will advert to the case of *Monarch Refrigerating Co. v. City of Chicago,* 328 Ill. App. 546, where the plaintiff was engaged in the cold storage warehouse business. The complaint alleged among other things that the construction of the Wabash avenue bridge and viaduct had interfered with the free and open access plaintiff had to other sections of the city; that the change in grade deprived plaintiff of the beneficial use of its property and that the construction of the improvement interfered with the ingress and egress from and to the premises. There was also a count that the damage was caused by negligence in construction of the viaduct. The city filed a motion to dismiss on the ground the action was barred by the five year statute of limitations. The court held that the statute of limitations ran from April 29, 1931 and at page 556 said,

"Plaintiff could have brought its action on April 29, 1931. At that time the damage to plaintiff's property was evident and ascertainable. The grades of the streets had been changed and the street, viaduct and approaches were paved and open to traffic. We are satisfied that plaintiff's action was barred by the five year limitation and that the Court was right in sustaining defendant's motion and entering judgment against plaintiff."

*Schlosser v. Sanitary District of Chicago,* 299 Ill. 77, was a suit for damages for flooding property on the DesPlaines River by lowering the dam at Lockport, the court said at pages 82, 83:

"The drainage canal is a permanent structure whose use and operation in the manner authorized by law were necessarily injurious to the appellee's land. The declaration did not complain of the manner of construction, operation or use of the canal or the works connected with it or of any negligence of the appellant, but alleged a permanent injury to the appellee's land caused by the existence, operation and use of the canal in the manner authorized by law. For such injury the person injured must recover all damages which he has sustained or will sustain in the future from the operation of the canal in the manner and to the amount then authorized by law in a single suit, and that suit must be brought within five years after the completion of the work and putting it in operation. (*Suehr v. Sanitary District,* 242 Ill. 496; *Vette v. Sanitary District,* 260 id. 432; *Shaw v. Sanitary District,* 267 id. 216; *Wheeler v. Sanitary District,* 270 id. 461.)"

These two cases are followed by *Horner v. County of Winnebago,* 332 Ill. App. 217, an action for trespass began in 1945, for damages caused by constructing a highway over plaintiff's land. There it was held the cause of action was barred by the statute of limitations.

The plaintiff relies on *City of Bloomington v. Costello*, 65 Ill. App. 407, where the city constructed a sewer system emptying into a creek adjacent to plaintiff's property and placed an obstruction in the stream which caused the water to overflow the premises. The court held that the city had no right to maintain a nuisance and the fact that the sewer was established before plaintiff bought his property was of no consequence.

In the *Bloomington* case there was evidence that the flow had increased and the obstructions complained of had multiplied since the original construction of the sewer; whereas in the case under consideration the gist of the action is the damage caused by the original change of grade. After the improvement of Wyman street nothing further was done by the city and this damage to plaintiff's property neither diminished or increased thereafter.

In *Chicago, B. & Q. R: Co. v. Schaffer*, 124 Ill. 112 and *Ohio & M. R. Co. v. Wachter*, 123 Ill. 440, the court held that because the bridge was defectively constructed, the railroad was liable for damages resulting from such defective construction.

Most of the cases cited by plaintiff are cases of temporary nuisance or where there is liability for negligence in the maintenance of public property.

*City of Bloomington v. Pollock*, 141 Ill. 346, involved an action for damages because of raising the level of the street in front of plaintiff's premises and paving it, so that his premises were overflowed by water and his lot and house were so far below the level of the street to make entrance thereto unsafe. The court held that before the Constitution of 1870 a city was not liable for damages due to change of grade but that since time it was so liable.

The case of *Horn v. City of Chicago*, 403 Ill. 549, involved an action wherein the plaintiffs sued to recover damages for destroying ingress and egress to

plaintiff's property by the construction of the Wabash avenue viaduct. The city filed a motion to dismiss on the ground the suit was barred by the five year statute of limitations. The plaintiffs contended among other things that the twenty year statute applied on the theory of adverse possession and prescription. The court found that the city had legal authority to make the improvement in the street, that it was properly made in pursuance of such authority and that it is a permanent structure, the existence of which is necessarily injurious to plaintiffs' property.

The court said;

"Before the adoption of our present constitution a landowner could have no relief for damages occasioned by the construction or maintenance of a public improvement in a proper manner under lawful authority, although his property was thereby rendered practically valueless, unless there had been an actual physical invasion of the land itself. Thus, a property owner was guaranteed compensation for any deprivation of *res,* but not of *jus.* This situation continued until 1870, when the framers of our present constitution added the provision that private property should not be damaged for public use without just compensation. It is under this last constitutional provision, and none other, that a landowner may claim compensation for the destruction or disturbance of easements of light and air, and of accessibility, or of such other intangible rights as he enjoys in connection with, and as incidental to, the ownership of the land itself."

The court concluded:

"We are of the opinion, from an analysis of the many cases, that a cause of action such as appellants have sued on here, must be commenced under section 15 of the Limitations Act, (Ill. Rev. Stat. 1947, chap. 83, par. 16), providing that actions to recover damages for any injury done to real property shall be commenced within five years next after the cause of action

accrues, and that this violates no constitutional right and harmonizes with recognized principles of law.''

An analysis of the cases that throws any light upon the problem under consideration clearly indicates that where there is a change of grade by the construction of a permanent improvement lawfully made the damage arises when the improvement is completed and the statute of limitations begins to run at that time.

In *Morgan County v. Goans,* 138 Tenn. 381, 198 S. W. 69, 5 A. L. R. 198, the facts are almost the same as in the case at bar, though the question of the statute of limitations was not involved. The court held that an abutter on a side road had a right of action where the county built a turnpike at such a grade that there was an embankment 8 or 10 feet high and access to the side road was cut off. The court however concluded with this statement at page 200:

''Petition for rehearing denied February 16, 1918, with the direction that the case was not one of recurring damages, but that the sum allowed in this case covered the entire injury.''

■■ The court in that case determined that the damage was permanent. The question as to whether the obstruction created was a permanent or temporary one is discussed in a note in 128 A. L. R. 780, on the measure of damages for injury to land by obstruction of the highway. The annotator discusses the particular question on pages 787–792:

''Whether such obstruction or injury is permanent may depend upon the lawfulness of the obstruction and the fact that it may not be abated or removed. Thus, where the obstruction complained of is lawful or the right to maintain it in the street or highway is recognized, and it is not transitory in character, it is regarded as permanent and the measure of damages with respect to a permanent injury is applicable.''

The annotator discusses many cases on the subject and they all seem to agree that when the obstruction is law-

fully made and is permanent, the cause of action arises on the completion of the work. The City of Rockford had a right to change the grade of Wyman street. That it did in 1930 and the alley was thereby closed to vehicular traffic. They did this in a special assessment proceeding. The trial court refused to admit into evidence these proceedings. This was error. This conclusion seems to be further justified when we consider the statute of limitations cases under vacation proceedings. *Lockwood & Strickland Co. v. Chicago*, 279 Ill. 445, 448; *Mowatt v. Chicago*, 292 Ill. 578, 580; *R. A. Wells Lumber Co. v. Chicago*, 294 Ill. 574. The authorities are uniform in their holding that when a city vacates an alley completely the abutting property owner whose property is cut off by the vacation of the alley would have a right of action but that such action must be brought within five years or be barred by the five year statute of limitations.

When plaintiff bought the property in question in 1944, it knew the condition of the alley. It purchased the property from the heirs of the former owner and also bought in the property at a foreclosure sale for the unpaid taxes and special assessments. The entire amount paid by them was $2,500. When they purchased the property they well knew that the alley was closed to vehicular traffic. In this connection it is interesting to consider the case of *LaSalle County Carbon Coal Co. v. Sanitary Dist. of Chicago*, 260 Ill. 423. This was an action for damages for flooding the plaintiff's land on the Illinois River.

The court said at page 430:

"If the owner of real estate injuriously affected or damaged by a permanent structure, and who has not brought an action to recover damages, conveys the land to another, the cause of action does not pass with the title nor inure to the benefit of the grantee, but the grantee takes the land as he finds it, the presumption being that he has the benefit of the depreciation in value in the price paid. This has been so frequently

held by this court that it is unnecessary to do more than cite some of the cases. *Chicago and Alton Railroad Co. v. Maher*, 91 Ill. 312; *Chicago and Eastern Illinois Railroad Co. v. Loeb*, 118 id. 203; *Wabash, St. Louis & Pacific Railway Co. v. McDougall*, 118 id. 229; *Illinois Central Railroad Co. v. Allen*, 39 id. 205; *Galt v. Chicago and Northwestern Railway Co.*, 157 id. 125.''

The complaint states that in 1946, the city granted the Central Illinois Electric and Gas Company the right to erect a building in the alley which building was constructed and is referred to in the briefs as a ''pill box.'' The building was removed before trial and the suit dismissed as to the Electric and Gas Company. The question of the obstruction created by the building in the alley is therefore not before us. It is plaintiff's contention that this type of obstruction is no different than blocking the alley by raising the level of Wyman street 55 inches without providing a safe passageway for vehicles. This however is a different type of a nuisance than the one created by the improvement of Wyman street. The construction of the pill box would no doubt be vulnerable to attack under the cases heretofore considered when a temporary obstruction or nuisance was involved. The rulings of the trial court indicated that he was of the opinion that the two obstructions were identical but we are of the view that they were not. The change of grade was created by a permanent improvement lawfully made, while the construction of the pill box would not fall in the same category.

There are other questions presented on the appeal but since we are of the opinion that plaintiff's claim is barred by the five year statute of limitations, we deem it unnecessary to consider them.

The judgment appealed from is therefore reversed.

*Judgment reversed.*